COLORADO COURT OF APPEALS                    **2017COA45**

Court of Appeals No. 16CA0029
El Paso County District Court No. 13DR30542
Honorable Gilbert A. Martinez, Judge

In re the Marriage of

Michelle J. Roth,

Appellant,

and

Robert M. Roth,

Appellee.

JUDGMENT VACATED, ORDER REVERSED,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Graham and Navarro, JJ., concur

Announced April 6, 2017

Davide C. Migliaccio, Attorney at Law, Davide C. Migliaccio, Colorado Springs,
Colorado, for Appellant

Stinar, Zendejas & Gaithe, LLC, M. James Zendejas, Colorado Springs,
Colorado, for Appellee

¶ 1     This dissolution of marriage case between Michelle J. Roth (wife) and Robert M. Roth (husband) presents a novel issue involving the interplay of subject matter jurisdiction between the district court and an arbitrator when the arbitrator dies while a request to modify or correct an arbitration award is pending before him.

¶ 2     The appeal arises from the district court's judgment confirming an arbitration award dividing the parties' marital estate. Wife contends that the district court lacked subject matter jurisdiction to confirm the award when both parties had timely requested the arbitrator to modify or correct it but the arbitrator died before he could rule on those requests. She argues that, at that point, the court only had jurisdiction to appoint a replacement arbitrator to complete the arbitration proceedings. Husband responds that the court properly confirmed the award because wife had not alleged proper grounds under the Colorado Uniform Arbitration Act (CUAA), §§ 13-22-201 to -230, C.R.S. 2016, to modify or correct it.

¶ 3     We conclude that the district court exceeded its jurisdiction in confirming the award and that it erred in denying wife's motion to

appoint a replacement arbitrator. Thus, we vacate the judgment confirming the award, reverse the order denying wife's motion, and remand the case to the district court to appoint a replacement arbitrator to complete the arbitration proceedings.

## I. Background

¶ 4 After husband petitioned in 2013 to end the parties' three-year marriage, the parties agreed to arbitrate the permanent orders issues and requested that the district court transfer jurisdiction of the case to their chosen arbitrator, a retired district court judge. The court granted their request.

¶ 5 The parties' arbitration agreement provided in relevant part that all dissolution issues would be submitted to arbitration; the CUAA would govern the proceedings; after issuing an award, the arbitrator would reserve jurisdiction for twenty days to enable the parties to seek clarification, correction, or modification of the award; and if jurisdiction was reserved on an issue, the arbitrator would hear it unless he was unavailable.

¶ 6 Arbitration proceedings were conducted pursuant to the parties' agreement, and the arbitrator issued an award on March 10, 2015. In relevant part, the award divided the parties' property

by giving seventy-five percent to husband and twenty-five percent to wife based on the short duration of the marriage and husband's greater contributions to acquiring the property. It further provided that the resulting equalization payment due from husband to wife would be paid in quarterly installments, based on one percent of the gross profits of husband's business, plus statutory interest. The award also provided, consistent with the parties' arbitration agreement and the CUAA, that the parties would have twenty days to request a correction, modification, or clarification of the award from the arbitrator. *See* § 13-22-220(1)-(2), C.R.S. 2016.

¶ 7 Both parties submitted timely requests to the arbitrator for modification and clarification of the award. Wife raised multiple issues in her request, including the equity of the seventy-five percent/twenty-five percent marital estate division, the valuation of husband's business interests, the distribution of the parties' tax refund, and the equalization payment terms. Husband requested that the arbitrator clarify the award concerning the tax refund and tax debt, reconsider the valuation finding for one of his businesses, and reduce the equalization payments to wife accordingly.

¶ 8    On April 12, 2015, while the parties were in the process of submitting their responses and replies to the arbitrator concerning their requests for modification or clarification, the arbitrator died. Five days later, wife moved in district court to appoint a replacement arbitrator under section 13-22-215(5), C.R.S. 2016, which provides that "[i]f an arbitrator ceases or is unable to act during the arbitration proceeding, a replacement arbitrator shall be appointed . . . to continue the proceeding and to resolve the controversy." A week later, husband moved that the district court confirm the arbitrator's award under section 13-22-222, C.R.S. 2016. A status conference was set to address the parties' motions.

¶ 9    At the conference, wife argued that the arbitrator had greater power under the CUAA to modify the award than the court did, and therefore, the court could not confirm the award when the parties' requests to the arbitrator to modify and clarify it were still pending, but must instead appoint a replacement arbitrator to consider those requests. Husband argued that under the CUAA, even the arbitrator cannot alter the merits of the award, and therefore, the parties' arbitrator, even if still alive, would have lacked authority to modify the award on the grounds wife alleged. Wife responded that

4

a replacement arbitrator, and not the court, must determine which issues fall within the statutory modification criteria and which do not. She further argued that she was confident the arbitrator would have corrected the award concerning one issue she raised — that under the equalization payment terms, more in interest will accrue on the equalization amount than is paid out to her quarterly.

¶ 10 The district court found that wife was essentially seeking to relitigate the permanent orders and it denied her motion for a replacement arbitrator and granted husband's motion to confirm the award. It then entered a dissolution decree incorporating the award.

## II. Husband's Request to Dismiss the Appeal

¶ 11 Initially, we deny husband's request to dismiss the appeal as untimely under C.A.R. 4. Wife's notice of appeal was filed on the forty-ninth day after the order denying her motion for C.R.C.P. 59 relief. Accordingly, the appeal is timely under C.A.R. 4(a), which requires that a notice of appeal be filed within forty-nine days of such an order.

## III. Subject Matter Jurisdiction

¶ 12    Wife contends that under the CUAA, the district court lacked

subject matter jurisdiction to confirm the arbitration award while

the parties' requests to modify or correct it were pending before the

arbitrator.  She argues that when the arbitrator died before ruling

on the parties' requests, the court had subject matter jurisdiction

only to appoint a replacement arbitrator.  We agree and therefore

vacate the district court's judgment confirming the award.

## A.  Legal Standards

¶ 13    We review de novo the legal issue of whether the district court

has subject matter jurisdiction.  *Egelhoff v. Taylor*, 2013 COA 137,

¶ 23, 312 P.3d 270, 274.

¶ 14    "A court has subject matter jurisdiction where it has been

empowered to entertain the type of case before it by the sovereign

from which the court derives its authority."  *Wood v. People*, 255

P.3d 1136, 1140 (Colo. 2011); *see In re Marriage of Stroud*, 631 P.2d

168, 170-71 (Colo. 1981).  Whether a court has subject matter

jurisdiction is determined by the nature of the claim and the relief

sought.  *Stroud*, 631 P.2d at 171.  Statutory limits on a court's

subject matter jurisdiction must be explicit.  *Wood*, 255 P.3d at

1140.  A judgment rendered without subject matter jurisdiction is void.  *Stroud*, 631 P.2d at 170.

¶ 15     In construing the CUAA, "we undertake de novo review and look first to the plain language, always striving to give effect to the General Assembly's intent and chosen legislative scheme."  *Sooper Credit Union v. Sholar Grp. Architects, P.C.*, 113 P.3d 768, 771 (Colo. 2005).

### 1.  The District Court's Subject Matter Jurisdiction

¶ 16     "In Colorado, arbitration is a favored method of dispute resolution."  *Lane v. Urgitus*, 145 P.3d 672, 678 (Colo. 2006).  Thus, under the CUAA, a valid and enforceable arbitration agreement "divests" the district court of jurisdiction over all questions submitted to arbitration, "pending the conclusion of arbitration." *Id.* at 679; *see Braata, Inc. v. Oneida Cold Storage Co.*, 251 P.3d 584, 588 (Colo. App. 2010); *see also* § 13-22-206(1), C.R.S. 2016 (agreement to arbitrate is "valid, enforceable, and irrevocable"). Accordingly, if an enforceable agreement requires arbitration of a particular claim, "a court lacks subject matter jurisdiction to consider that issue."  *McCord v. Affinity Ins. Grp., Inc.*, 13 P.3d 1224, 1231 (Colo. App. 2000); *see Guthrie v. Barda*, 188 Colo. 124,

126-27, 533 P.2d 487, 488 (1975) (upholding district court order dismissing action for lack of subject matter jurisdiction based on valid agreement to arbitrate).

¶ 17    Under section 13-22-222(1), when a motion to confirm an arbitration award is made to the district court, "the court shall issue a confirming order unless the award is modified or corrected [by the arbitrator] pursuant to section 13-22-220," or by the court pursuant to section 13-22-224, C.R.S. 2016, or the award is vacated by the court pursuant to section 13-22-223, C.R.S. 2016. *See Applehans v. Farmers Ins. Exch.*, 68 P.3d 594, 599 (Colo. App. 2003) (concluding that district court correctly denied motion to confirm arbitration award when party's application to modify or correct it was pending with arbitrator).

2. The Arbitrator's Subject Matter Jurisdiction

¶ 18    Under the common law doctrine of *functus officio,* the arbitration proceedings concluded and the arbitrator lost subject matter jurisdiction after delivering an award to the parties. *Osborn v. Packard,* 117 P.3d 77, 80 (Colo. App. 2004). The CUAA was intended to alter that doctrine, however, by giving arbitrators some specified power to modify or correct awards even after they have

8

been delivered to the parties. *Id.*; *Applehans*, 68 P.3d at 597; 5A Stephen A. Hess, *Colorado Practice Series, Handbook on Civil Litigation* § 1:17 (2016 ed.); *compare* § 13-22-220 (statute governing modification of arbitration awards)*, and Sooper Credit Union*, 113 P.3d at 769, 772-73 (permitting arbitrator to modify or correct confusing awards for clarity), *with* 9 U.S.C. §§ 9-11 (2012) (federal arbitration act (FAA) provisions governing modification of arbitration awards), *and Fradella v. Petricca*, 183 F.3d 17, 20 n.4 (1st Cir. 1999) (noting that FAA does not give arbitrators power to modify or correct awards after they are delivered).

¶ 19    Under the CUAA, on a party's motion to the arbitrator within twenty days of notice of the award, the arbitrator may modify or correct an award (1) if there is an evident mathematical miscalculation or evident mistake in the description of a person, thing, or property referred to in the award; (2) if the award is imperfect in a matter of form not affecting the merits of the decision; (3) if the arbitrator did not issue a final and definite award on a claim submitted; or (4) to clarify the award. § 13-22-220(1); *see* § 13-22-224(1)(a), (1)(c); *see also Rocha v. Fin. Indem. Corp.*, 155 P.3d 602, 604 (Colo. App. 2006).

## B. Analysis

¶ 20    Under the terms of the parties' arbitration agreement and pursuant to the CUAA, subject matter jurisdiction over the permanent orders issues was transferred to the arbitrator, thereby divesting the court of its jurisdiction to determine such issues. *See Lane*, 145 P.3d at 679; *Braata*, 251 P.3d at 588; *see also* § 13-22-206(1). Subject matter jurisdiction then remained with the arbitrator after the award was issued, again under both the CUAA and the parties' agreement, because the parties timely requested that the arbitrator modify or correct the award. *See* § 13-22-220(1)-(2); *see also Osborn*, 117 P.3d at 80 (arbitrator did not exceed his jurisdiction by issuing a clarifying order on party's timely request after the award was issued). Under these circumstances, the arbitration proceedings had not yet concluded and subject matter jurisdiction to confirm the award was not yet in the district court when the arbitrator died. *See Lane*, 145 P.3d at 679 (Courts are divested of jurisdiction "pending the conclusion of arbitration."); *see also* § 13-22-222(1) (court shall confirm award *unless* it is modified or corrected by the arbitrator under section 13-22-220).

¶ 21    Husband's contention — asserted for the first time at oral argument — that the arbitrator had lost jurisdiction because he did not act on the parties' requests to modify or correct the award within the twenty-day period provided in section 13-22-220(2) is unpersuasive.  Husband provided no authority at oral argument to support this contention.  Moreover, it conflicts with the plain language of the parties' agreement and the CUAA.  The agreement provides that the arbitrator reserves jurisdiction "[p]ursuant to statute" for twenty days "for the parties to seek clarification, correction, or modification of the award."  The CUAA provides that "[a] motion" to modify an award "shall be made . . . within twenty days after the movant receives notice of the award" and it permits an arbitrator to modify or clarify an award on such a motion.  § 13-22-220(1), (2).  Husband's position conflicts with subsection (3) of section 13-22-220, which gives a party ten days to object to another party's motion to modify or correct an award.  Thus, under the statute, the arbitrator clearly retains authority to rule on a timely motion to modify even after the original twenty days have expired.

¶ 22    Husband's argument that any error by the district court in confirming the award was harmless because wife did not raise

proper grounds under the CUAA for the arbitrator to have modified or corrected it is also unpersuasive. The parties contracted for arbitration, including for the arbitrator to determine any modification or clarification request made to him within twenty days of the award. Accordingly, only the arbitrator, and not the court, had subject matter jurisdiction to resolve such requests, including determining, in the first instance, whether proper grounds were alleged for modification or correction under section 13-22-220(1).

¶ 23     That the CUAA gives the arbitrator greater power to alter an award after it has been issued than it gives to the court supports our conclusion. Under the CUAA, an arbitrator has the power to clarify an award, even when the award is not patently ambiguous, but the court does not have that power. *See Sooper Credit Union*, 113 P.3d at 772; 5A Hess, *Handbook on Civil Litigation* § 1:17; *compare* § 13-22-220(1)(c) (giving arbitrator power to modify or correct award in order to clarify it), *with* § 13-22-224(1) (giving court power to modify or correct award only when there is an "evident" miscalculation or mistake in the award or it is imperfect in a matter of form).

¶ 24    Additionally, a motion to an arbitrator to modify or correct an award tolls the time within which to move that the court do so under section 13-22-224(1) or to move that the court vacate the award under section 13-22-223.  *See Swan v. Am. Family Mut. Ins. Co.*, 8 P.3d 546, 547-48 (Colo. App. 2000); *but cf. Am. Numismatic Ass'n v. Cipoletti*, 254 P.3d 1169, 1170-71 (Colo. App. 2011) (concluding that arbitration award dismissing case was final and time to move in district court to challenge it began running even though collateral request for attorney fees was still pending before arbitrator).  As the *Swan* division noted, requiring a party seeking to modify or vacate an award to file duplicate motions with both the arbitrator and the court would be inconsistent with the legislative intent to make arbitration effective and efficient and would not promote judicial economy because it could lead to the anomalous result of an arbitrator modifying an award at the same time the court is vacating it.  8 P.3d at 548; *cf. Fradella*, 183 F.3d at 19-20 & n.4 (request to an arbitrator for modification or clarification does not toll time to file a motion in court under the FAA, which contains no provision allowing for such a request to an arbitrator).

¶ 25    Accordingly, under CUAA's framework, once subject matter jurisdiction has been transferred to an arbitrator, it is not then transferred back to the court to act on the award — whether to modify, vacate, or confirm it — until the arbitration proceedings are concluded, meaning that the arbitrator has resolved any timely section 13-22-220(1) requests to modify or correct the award. *See* § 13-22-222(1) (court shall confirm award *unless* it is modified or corrected by the arbitrator pursuant to section 13-22-220); *Applehans*, 68 P.3d at 599 (court properly refused to confirm award when application was pending before arbitrator to modify or correct it); *see also Lane*, 145 P.3d at 679 (court is divested of jurisdiction pending conclusion of arbitration).

¶ 26    We note that, as discussed at oral argument, the parties' agreement states that if jurisdiction is reserved by the arbitrator on any issue after the award is issued, the arbitrator will hear the issue "unless he is unavailable." Although this provision of the agreement does not specify what happens if the arbitrator is unavailable, the agreement provides that the CUAA governs the proceedings. And section 13-22-215(5) requires the appointment of a replacement arbitrator when an arbitrator becomes unable to act

14

during the arbitration proceedings. Thus, when the arbitrator died before he could rule on the parties' timely requests to modify or correct the award, the district court had subject matter jurisdiction under the CUAA only to appoint a replacement arbitrator to complete the arbitration proceedings. *See* § 13-22-215(5); *see also Lane*, 145 P.3d at 679.

¶ 27    That is not to say, however, that such a replacement arbitrator may go beyond the authority provided under section 13-22-220(1) in ruling on the parties' pending modification requests. *See Sooper Credit Union*, 113 P.3d at 771 ("Once an arbitrator issues and delivers an award to the parties, modification or correction is permitted only under the 'narrow circumstances' provided by statute." (quoting *Applehans*, 68 P.3d at 597)). Rather, the replacement arbitrator may act only pursuant to the statute and "may not redetermine the merits" of the award. *Id.* at 769; *cf. Rocha*, 155 P.3d at 604-05 (reversing order denying motion to vacate modified arbitration award that had changed the substance of the original award). However, the arbitrator, and not the court, must first rule on the parties' pending requests for modification or correction under section 13-22-220. Only then will the arbitration

proceedings be concluded and subject matter jurisdiction returned to the district court for further proceedings to confirm the final award under section 13-22-222, to vacate it under section 13-22-223, or to modify it under section 13-22-224.

¶ 28 The *Applehans* case is illustrative. There, an arbitrator entered an award for the plaintiff for damages and, within ten days, the defendant insurance company filed a request for modification with the arbitrator to reduce the award to the amount of its policy limits. 68 P.3d at 596. Before the arbitrator could rule on that modification request, however, the plaintiff moved that the district court confirm the original award. *Id.* The court refused to do so because of the pending modification request before the arbitrator. *Id.* The arbitrator then held a hearing and entered a modified award for the policy limit amount. *Id.* The plaintiff then moved for the court to vacate, modify, or correct the modified award, and the court denied that motion. *Id.*

¶ 29 On appeal, a division of this court reversed the district court's order refusing to vacate the modified award, holding that the arbitrator had exceeded his authority under the CUAA by substantively changing the amount of the plaintiff's recovery. *Id.* at

16

596-98. The division affirmed the court's denial of the plaintiff's motion to confirm the original award, however, finding that the court acted properly because the defendant's request to the arbitrator to modify or correct the award was still pending when the court ruled. *Id.* at 599, 601.

¶ 30 In contrast, here, the district court erred and, we conclude, exceeded its subject matter jurisdiction by confirming the arbitration award while the parties' timely requests to the arbitrator to modify or correct it were still pending. Under the CUAA and consistent with the parties' arbitration agreement, the court should have instead appointed a replacement arbitrator to consider the pending requests. *See* § 13-22-215(5).

¶ 31 Last, husband's argument that the district court had subject matter jurisdiction to confirm the award under section 13-22-220(4) is unpersuasive. This subsection permits a court in which a motion to confirm, modify, correct, or vacate an award is pending to submit the claim at issue to the arbitrator to resolve. *See* § 13-22-220(4). That is not what happened here. The court did not return an issue that was properly before it pursuant to one of these types of motions to the arbitrator to decide. Rather, it decided an issue that

was properly before the arbitrator under section 13-22-220(1), but that the arbitrator had not yet resolved. In doing so, it exceeded its subject matter jurisdiction under the CUAA.

## IV. Replacement Arbitrator

¶ 32    Wife further contends that the district court erred by denying her motion to appoint a replacement arbitrator. We again agree and we reverse the court's order and remand the case to appoint a replacement arbitrator to complete the arbitration proceedings.

¶ 33    The language of the CUAA is mandatory on this issue: if an arbitrator ceases or is unable to act, a replacement arbitrator "shall be appointed" to continue the proceedings and resolve the controversy. § 13-22-215(5); *see also* § 13-22-211(1), C.R.S. 2016. The word "shall" in a statute is presumed mandatory. *People v. Bland*, 884 P.2d 312, 316 (Colo. 1994); *In re Marriage of Slowinski*, 199 P.3d 48, 52 (Colo. App. 2008). And, because under the CUAA, arbitration agreements are valid, enforceable, and *irrevocable*, *see* § 13-22-206(1), a mandatory meaning of "shall" applies here consistent with the overall statutory scheme and with the parties' agreement to submit all issues, including any timely modification or clarification requests, to the arbitrator. *Cf. Slowinski*, 199 P.3d at

52 (construing term "shall" in statute providing for emergency restrictions of parenting time as mandatory consistent with overall purpose of statute).

¶ 34 Accordingly, because it is undisputed that the parties' chosen arbitrator could not act as of April 12, 2015, the district court was required to appoint a replacement arbitrator to continue and complete the arbitration proceedings.

## V. Husband's Request for Appellate Attorney Fees

¶ 35 In light of the disposition, and because husband fails to state a legal basis for recovery of appellate attorney fees, we deny the request. *See* C.A.R. 39.1 (party requesting appellate fees must explain legal and factual basis for such an award).

## VI. Conclusion

¶ 36 The district court's judgment confirming the March 10, 2015, arbitration award is vacated, its order denying wife's motion to appoint a replacement arbitrator is reversed, and the case is remanded to appoint a replacement arbitrator to complete the arbitration proceedings.

JUDGE GRAHAM and JUDGE NAVARRO concur.